1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16

| | |
|---|---|
| TINA TWYNETTE DAVENPORT,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>        Defendant. | Case No.  1:15-cv-00675-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL<br>SECURITY APPEAL<br><br>(ECF Nos. 22, 23, 24) |

17
18

## I.

## INTRODUCTION

19
20
21
22
23

Plaintiff Tina Twynette Davenport ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

24
25
26
27

Plaintiff suffers from spinal stenosis, sciatica, chronic fatigue, degenerative disc disease, osteoarthritis, fibromyalgia, migraine headaches, obesity, major depressive disorder, and post-traumatic stress disorder ("PTSD").  For the reasons set forth below, Plaintiff's Social Security

28

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 6, 8.)

appeal shall be denied.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on February 14, 2012, and a Title XVI application for supplemental security income on February 1, 2012.  (AR 100, 115.)  Plaintiff's applications were initially denied on June 29, 2012, and denied upon reconsideration on January 25, 2013.  (AR 171, 181, 203-207, 211-215.)  Plaintiff requested and received a hearing before Administrative Law Judge Danny Pittman ("the ALJ").  Plaintiff appeared for a hearing on July 23, 2013.  (AR 62-99.)  On July 26, 2013, the ALJ found that Plaintiff was not disabled.  (AR 182-193.)

On May 22, 2014, the Appeals Counsel remanded the case to the ALJ for further proceedings.  (AR 199-202.)  Plaintiff requested and received a second hearing before the ALJ.  Plaintiff appeared for a second hearing on August 21, 2014.  (AR 27-61.)  On September 26, 2014, the ALJ found that Plaintiff was not disabled.  (AR 7-19.)  The Appeals Council denied Plaintiff's request for review on February 25, 2015.  (AR 1-4.)

### A.    Relevant Hearing Testimony

Plaintiff appeared for a hearing and testified on August 21, 2014.  (AR 30-57.)

Plaintiff has one child who was seventeen years old on the date of the hearing.  (AR 30-31.)  Plaintiff's son lives mostly with her and his father comes to see him every few weeks.  (AR 31.)  Plaintiff receives disability benefit from the Veteran's Administration ("VA").  (AR 32.)  Plaintiff has a 70 percent disability rating from the VA.  (AR 54.)  But the VA did not find Plaintiff unemployable.  (AR 54.)  Plaintiff has a driver's license.  (AR 32.)

Plaintiff was in the Army and worked as a medic and a truck driver.  (AR 32-33.)  Plaintiff was attending college but dropped out in 2010 or 2011 due to having problems with her grades because of migraines.  (AR 32.)  Plaintiff was accepted to UC Merced but her back went out and she did not attend.  (AR 52.)  Plaintiff was attending college online through University of Phoenix taking classes at home.  (AR 52.)

Plaintiff takes medication for pain, fibromyalgia, migraines, arthritis, depression and

anxiety.  (AR 34.  Plaintiff's medications help her somewhat.  (AR 34.)  The pain medication helps but does not relieve her pain completely.  (AR 34.)  Plaintiff has migraines several times a month, three to four times.  (AR 49.)  Plaintiff sometimes runs out of her migraine medication because her migraines usually last for several days and she only receives around nine pills per month. (AR 34, 49.)  Plaintiff was referred to a psychiatrist for her depression and anxiety.  (AR 34.)  Plaintiff's medication helps sometimes but is kind of up and down.  (AR 34-35.)  Plaintiff has dry mouth, constipation, and drowsiness from her medications.  (AR 35.)  Plaintiff's neurologist recommended holding off on surgery as long as she possibly can because of her age. (AR 35.)  Plaintiff has had injections in her back that help for a couple months and then they wear off.  (AR 35.)  Her lower back hurts all the time.  (AR 35.)  Plaintiff had physical therapy that did not help.  (AR 35-36.)  Plaintiff uses a TENS unit that provides temporary relief.  (AR 36.)  Plaintiff's lower back pain causes her to have difficulty sleeping.  (AR 51.)  She also has nightmares sometimes.  (AR 51.)  Plaintiff has difficulty sleeping about five nights per week. (AR 51.)

Plaintiff is receiving mental health treatment.  (AR 36.)  Plaintiff missed her last appointment because she had a migraine and needs to get back in.  (AR 36.)  She has never been hospitalized for mental health issues.  (AR 36.)  Plaintiff's mental health treatment helps somewhat because it gives her coping mechanisms but it has not improved her condition.  (AR 37.)  Plaintiff is able to concentrate for ten to fifteen minutes before she becomes frustrated.  (AR 52.)

Plaintiff has pain all day every day.  (AR 37.)  She has pain in her neck to the left side of her spine and in her lower back that radiates to her left buttock and leg down to her toes on occasion.  (AR 37-38.)  Plaintiff was having pain for about nine months before she filed for disability that had her hunched over and she could hardly walk, but then she got an epidural that helped for a couple months.  (AR 38.)  Plaintiff has not had an epidural for a little longer than a few months.  (AR 38.)  Plaintiff avoids pain by not doing things that cause pain.  (AR 39.)  If Plaintiff is on her feet for fifteen to twenty minutes she will hurt enough that she needs to stop what she is doing and sit down for twenty minutes or so.  (AR 39, 50.)  Then she can stand for

1   another twenty minutes or so.  (AR 50-51.)  Plaintiff spends more time in bed than she should, at
2   least four hours during the day.  (AR 50.)

3        Plaintiff will perform a chore and then sit down to rest before doing something else.  (AR
4   39.)  Plaintiff does not run anymore.  (AR 39.)  When she is shopping she leans over the cart
5   because anything that causes her to flex her spine backwards compresses her spine.  (AR 39.)
6   Plaintiff can drive short distances, but will lean forward if she is driving a long distance.  (AR
7   39.)  There have been times when she felt like she could not drive at all.  (AR 39.)  It bothers
8   Plaintiff to sit for long times.  (AR 39.)  It is not as bad sitting in a cushioned chair rather than a
9   hard chair.  (AR 40.)  Plaintiff can sit for an hour before needing to stand.  (AR 40.)  Plaintiff can
10  lift ten pounds.  (AR 40.)  Plaintiff can pick something up if she drops it but does so slowly.  (AR
11  40.)

12       Plaintiff loses focus a lot.  (AR 41.)  Plaintiff forgets appointments and sometimes forgets
13  to take her medication.  (AR 41.)  Plaintiff is able to follow three step instructions.  (AR 41.)
14  Plaintiff has trouble making decisions because she has difficulty focusing.  (AR 41-42.)  Plaintiff
15  has problems getting along with people because she has problems biting her tongue in situations
16  where she should.  (AR 42.)  She sometimes is argumentative.  (AR 42.)  Plaintiff was let go at
17  her last job because she walked out several times when she had an issue with an employee.  (AR
18  42.)

19       Plaintiff has crying spells a couple times a month.  (AR 43.)  Plaintiff has anxiety issues
20  when going to a crowded place.  (AR 43.)  Plaintiff does not like people coming up behind her or
21  getting too close to her.  (AR 43.)  Plaintiff can be short tempered and gets short with people.
22  (AR 43.)

23       On a typical day, Plaintiff gets up at 8:00 or 9:00 and getting out of bed is painful.  (AR
24  43.)  It takes her a while to get ready and Plaintiff does not get dressed and ready to go anywhere
25  until noon.  (AR 43-44.)  Plaintiff cleans up the kitchen, prepares meals, vacuums, mops, sweeps,
26  and does laundry.  (AR 44.)  Plaintiff goes to bed about 10:30 or so and then will wake up
27  around 2:30 or 3:30.  (AR 51.)  She will wake up every hour until it is time for her son to get up.
28  (AR 51.)

Plaintiff has friends and spends time with them and her mother, but has not gone to church, clubs, or anything in a long time.  (AR 45.)  She hangs out with her friends and talks or watches television.  (AR 45.)  Plaintiff occasionally goes to the movies or to restaurants.  (AR 45, 46.)  Plaintiff has to take migraine medication before she goes because she will generally get a migraine when she goes to the movies.  (AR 46.)  Plaintiff recently had tried to bike ride but it did not go well.  (AR 46.)  Plaintiff goes to the mall occasionally when she needs to go to a specific store but does not go to look or shop around.  (AR 46-47.)  Plaintiff has not taken a walk in years.  (AR 47.)

Plaintiff has an iPad on which she looks up information and plays Scrabble.  (AR 47.) She has a Facebook account that she is rarely on.  (AR 47.)  Plaintiff watches television, mainly medical and investigative discovery type shows.  (AR 47.)  She gets frustrated if people ask her questions while she is watching the shows.  (AR 48.)  She is not sure why she gets frustrated but it may be because it is hard for her to follow the program herself.  (AR 50.)  Plaintiff has two medium size dogs that she and her son take care of.  (AR 48.)  The last time Plaintiff took her dogs for a walk was after she had her first cortisone shot.  (AR 48.)  She used to drive the dogs to the dog park and let them out, but that has not happened in years.  (AR 48.)  Plaintiff last saw Dr. Villarama one year prior to the hearing.  (AR 49.)

A Vocational Expert, Cheryl Chandler, also testified at the hearing.  (AR 57-61.)

**B.    ALJ Findings**

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff met the insured status requirements of the Social Security Act through June 30, 2014.

- Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 30, 2009.

- Plaintiff has the following severe impairments: degenerative disc disease, osteoarthritis, fibromyalgia, migraine headaches, obesity, major depressive disorder, and post-traumatic stress disorder ("PTSD").

- Plaintiff does not have an impairment or combination of impairments that meets

or medically equals the severity of the listed impairments.

- Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.976(b) except that she can occasionally balance; stoop; kneel; crouch; crawl; and climb ladders, ropes or scaffolds. Plaintiff can frequently climb ramps and stairs. Plaintiff can perform simple and routine tasks in a non-public setting with occasional interaction with co-workers.

- Plaintiff is unable to perform past relevant work.

- Plaintiff was born on January 29, 1971, and was 38 years old on the alleged disability onset date which is defined as a younger individual age 18-49.

- Plaintiff has at least a high school education and is able to communicate in English.

- Transferability of job skills is not material to the disability determination because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled" whether or not she has transferable job skills.

- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

- Plaintiff has not been under a disability as defined in the Social Security Act from April 30, 2009, through the date of decision.

(AR 12-18.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. §

404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004).   The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.   42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error."   Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).   "Substantial evidence" means more than a scintilla, but less than a preponderance.   Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted).   "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."   Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."   Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not

1  this Court's function to second guess the ALJ's conclusions and substitute the court's judgment

2  for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is

3  susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

4  upheld.").

5                                          **IV.**

6                          **DISCUSSION AND ANALYSIS**

7          Plaintiff contends that the ALJ erred 1) by disregarding the medical opinion of her

8  treating physician, Dr. Villarama; 2) in assessing Plaintiff's credibility; and 3) by failing to

9  adequately assess Plaintiff's VA rating.  Defendant counters that the ALJ properly provided

10  specific and legitimate reasons to reject the opinion of Dr. Villarama; provided legally adequate

11  reasons for the adverse credibility finding; and adequately considered the VA disability rating.

12  Plaintiff replies that Defendant cannot provide post hac reasons not cited by the ALJ in his

13  opinion.  Plaintiff seeks remand for calculation of benefits.

14          **A.      Medical Opinion**

15          The weight to be given to medical opinions depends upon whether the opinion is

16  proffered by a treating, examining, or non-examining professional.  See Lester v. Chater, 81 F.3d

17  821, 830-831 (9th Cir. 1995).  In general a treating physician's opinion is entitled to greater

18  weight than that of a nontreating physician because "he is employed to cure and has a greater

19  opportunity to know and observe the patient as an individual."  Andrews v. Shalala, 53 F.3d

20  1035, 1040-41 (9th Cir. 1995) (citations omitted).  If a treating physician's opinion is

21  contradicted by another doctor, it may be rejected only for "specific and legitimate reasons"

22  supported by substantial evidence in the record.  Ryan v. Commissioner of Social Sec., 528 F.3d

23  1194, 1198 (9th Cir.) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).

24          Where the treating physician's opinion is contradicted by the opinion of an examining

25  physician who based the opinion upon independent clinical findings that differ from those of the

26  treating physician, the nontreating source itself may be substance evidence, and the ALJ is to

27  resolve the conflict.  Andrews, 53 F.3d at 1041.  However, if the nontreating physician's opinion

28  is based upon clinical findings considered by the treating physician, the ALJ must give specific

1    and legitimate reasons for rejecting the treating physician's opinion that are based on substantial

2    evidence in the record.  Andrews, 53 F.3d at 1041.

3          The contrary opinion of a non-examining expert is not sufficient by itself to constitute a

4    specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it

5    may constitute substantial evidence when it is consistent with other independent evidence in the

6    record."  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The ALJ need not accept

7    the opinion of any physician that is brief, conclusory, and unsupported by clinical findings.

8    Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

9          Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for

10   rejecting the opinion of her treating physician, Dr. Villarama.  On May 10, 2013, Dr. Villarama

11   saw Plaintiff and completed a medical statement and headache questionnaire.  (AR 765-768,

12   791-792, 793-794.)  Plaintiff complained that she had a car accident three months prior that had

13   made her headaches a little worse than usual and some neck pain.  (AR 765.)  Dr. Villarama

14   found Plaintiff to have a limp gait with thoracic and lumber spine tenderness.  (AR 767-768.)

15   Plaintiff had "SLT" on the left, but no edema.  (AR 768.)

16         Dr. Villarama completed a medical source statement in which he diagnosed Plaintiff with

17   spinal stenosis, osteoarthritis, degenerative disc disease, and disc herniation.  (AR 791.)  He

18   opined that Plaintiff could stand for 15 minutes; stand in a workday 60 minutes; sit at one time

19   15 minutes; sit in workday 60 minutes; lift on occasional basis 10 pounds; lift on frequent basis 5

20   pounds; and occasionally bend and stoop.  (AR 791-792.)  Dr. Villarama found that Plaintiff

21   would frequently need to elevate her legs during an 8 hour workday.  (AR 792.)  These

22   limitations were due to moderate to severe pain; with objective signs of pain being tenderness to

23   palpation and limitation of motion.  (AR 792.)  He further opined that she would have

24   interruptions of work station to alleviate pain frequently, would frequently miss work due to

25   exacerbations of pain, and would be unreliable due to this condition and the attendant limitations.

26   (AR 792.)

27         Dr. Villarama also completed a headache questionnaire finding that Plaintiff had

28   prodromal symptoms, nausea and vomiting, irritability, photophobia, and increased sensitivity to

noise.  (AR 793.)  The frequency of her headaches were one per week which lasted 24 hours or several days.  (AR 793-794.)  Dr. Villarama opined that Plaintiff would be unable to work while suffering a headache, could never work around dangerous equipment or operate a motor vehicle, occasionally tolerate heat, cold, or dust, and never tolerate noise exposure.  (AR 794.)  Plaintiff's pain was found to be moderate to severe.  (AR 794.)  She would frequently need unscheduled interruptions of the work routine to alleviate pain; frequently miss work due to headache pain; and would probably be unreliable.  (AR 794.)  "The treating physician's opinion is not . . . necessarily conclusive as to either physical condition or the ultimate issue of disability."  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ gave very little weight to the opinion of Dr. Villarama because it was inconsistent with Plaintiff's treating records which indicated that her symptoms were generally mild and well-controlled with conservative treatment and was also inconsistent with Plaintiff's testimony and her demonstrated abilities.  (AR 16-17.)

On February 24, 2012, the record reflects Plaintiff reporting pain of 3-5/10 which was usually controlled by medication.  (AR 710.)  On March 5, 2012, Plaintiff complained of shooting pain which started in her back and radiated down to her foot.  (AR 1017.)  She complained of constant pain between 6-8/10 and difficulty walking and was given a steroid injection. (AR 1017, 1019.)  On April 6, 2012, Plaintiff reported feeling much better.  (AR 707.) Treatment notes reflect TTP over lumbar area.  (AR 707.)

On May 10, 2012, Plaintiff had a comprehensive internal medical examination by Dr. Wagner.  Dr. Wagner noted that Plaintiff was easily able to get out of a chair and walk without assistance, had no trouble getting onto and off of the examination table, and could bend over to take off her shoes and put them on with no difficulty.  (AR 657.)  Plaintiff had a normal physical examination with no lumbar paravertebral muscle spasms or tenderness and motor strength, bulk, and tone were 5/5 bilaterally.  (AR 660.)  The examiner noted that she has improved in term of overall myalgias since having injections for lower back pain.  (AR 660.)  Dr. Wagner opined that Plaintiff was able to walk and stand up to six hours and had no limitations in sitting with normal breaks.  (AR 660.)  She could lift fifty pounds occasionally and 205 pounds frequently; and was

1   limited to frequently stooping and crouching.  (AR 660.)  Dr. Wagner found no limitations in

2   handling, reaching, fingering and feeling or in working around heights, heavy machinery,

3   extreme temperatures, fumes, chemicals, dust or excessive noise.  (AR 660.)

4          On May 29, 2012, Plaintiff started physical therapy and complained of pain ranging from

5   6/10 to 10/10 that was aggravated by sitting, driving, or lumbar extension.  (AR 664.)  Plaintiff

6   had pain at end range and L5-SP spinous process was tender to palpation.  (AR 664.)  The record

7   notes that Plaintiff's pain was able to be reduced to 0 by adjusting the position of the pelvis and

8   she had significant reduction in pain following treatment.  (AR 897, 901.)

9          On July 1, 2012, Plaintiff presented at the emergency room complaining of exacerbation

10  of back pain that had begun one week prior.  (AR 673, 686.)  Plaintiff had no trouble bathing or

11  with her activities of daily living and reported pain of 6/10 after 6 hours.  (AR 674.)  On July 12,

12  2012, Plaintiff was seen complaining of pain down the left leg.  She had decreased range of

13  motion in the hips, worse on the left than the right.  (AR 704.)  On July 25, 2012, physical

14  therapy notes reflect that she had made fair progress and was reporting an increase of low back

15  pain and low level of activities.  (AR 669.  She ambulated with a forward trunk flexion and knees

16  flexed, with muscle guarding throughout low back and the bilateral lower extremities.  (AR 669.)

17  Plaintiff complained that her pain was increasing as the injection wore off.  (AR 669.)  On this

18  same date she reported to Dr. Villarama that her pain was 4/10 when not moving, 8/10 with

19  activities; and 6/10 when on medication.  (AR 852.)  She was able to complete household chores.

20  (AR 700.)  Plaintiff's gait was compensated, but she had no cervical or thoracic spine tenderness

21  and had normal mobility and curvature.  (AR 702.)  Plaintiff had lumbar spine tenderness and

22  moderate pain with motion.  (AR 702.)  On July 26, 2012, Plaintiff reported to the VA that her

23  pain was 3/10.  (AR 998.)

24         On August 27, 2012, Plaintiff reported her pain as 1/10.  (AR 697.)  On examination,

25  Plaintiff was found to have lumbar pain tenderness and mild pain with motion, but the

26  examination was otherwise normal.  (AR 698.)

27         Plaintiff was seen on September 27, 2012 at Stanford for a neurosurgical consultative

28  examination.  (AR 723.)  Plaintiff reported that for the last month or so she had quite an

1    improvement in her symptoms of back pain.  (AR 723.)  She could cope quite easily with her

2    back pain and her leg pain.  (AR 723.)  The intensity of the pain had decreased dramatically

3    down to the point that she was only taking one Vicodin a week.  (AR 723.)  She was able to walk

4    a bit more but still limited her activity because some of her pain happened from time to time.

5    (AR 723.)  Plaintiff reported she was quite anxious to reproduce the pain again.  (AR 723.)

6         On examination, Plaintiff was found to be in no distress and in relatively good health.

7    (AR 723.)  Cranial nerve exam revealed full range of motion of extraocular movement as well as

8    normal strength in trapezius sternocleidomastoid. (AR 723)  Motor examination of upper and

9    lower extremities did not reveal any focal weakness, and sensory examination did not reveal any

10   abnormalities.  (AR 723.)  There was neither Hoffman nor Babinski.  (AR 723.)  Plaintiff was

11   able to walk on her heels and toes and her posture was normal.  (AR 723.)  There was some pain

12   on palpation of her lower back as well as the paraspinal muscles, mostly on the left side.  (AR

13   723.)  Dr. Gelinas-Phaneuf opined that "[g]iven the fact that she has improved dramatically in

14   her symptomatology and that she requires mainly minimal medication to cope with the pain,

15   surgery at this point for a lumbar problem is not indicated."  (AR 724.)  Also, given that she has

16   minimal symptoms for her neck issues, Plaintiff should just be followed conservatively.  (AR

17   724.)

18        On October 24, 2012, Plaintiff reported to Dr. Villarama that her pain was 2/10 to 3/10

19   after an injection.  (AR 751, 753.)  She was able to do more household chores and had improved

20   ambulation.  (AR 751.)  On examination, Plaintiff was found to have lumbar pain tenderness and

21   mild pain with motion, but the examination was otherwise normal.  (AR 754.)  On November 2,

22   2012, Plaintiff reported that she had good relief with the previous procedure and had exercised

23   and lost ten pounds but the pain had returned in July.  (AR 988.)  She had an injection the

24   previous Monday and her pain was 75 percent better.  (AR 988.)

25        On February 1, 2013, Plaintiff was seen by Dr. Villarama and reported her pain as 0/10.

26   (AR 758.)  There are no musculoskeletal findings on examination.  (AR 759.)  On February 28,

27   2013, Plaintiff complained of pain of 3/10.  (AR 762.)  On examination, the physician noted

28   "TTP lumbar and cervical spine," some spasm."  (AR 763.)

On April 23, 2013, Plaintiff reported pain of 2/10 with more frequent migraines and she was receiving some relief with medication.  (AR 978-979.)

On May 10, 2013, Plaintiff reported that she had been in a car accident three months prior and her headache was a little worse than usual with some neck pain.  (AR 765.  Dr. Villarama noted a limp gait, cervical, thoracic, and lumbar spine tenderness with "SLT left."  (AR 767-768.)   Plaintiff had no edema.  (AR 768.)   Dr. Villarama completed the medical source statements referenced above.  (AR 791-792, 793-794.)

On June 5, 2013, Plaintiff had a neurology consultation with Dr. Mehta at the VA.  (AR 947-958.)   Dr. Mehta's examination notes no extremity pain; and mild paresthesia and/or dysesthesias and numbness in the bilateral upper extremities.  (AR 949)   He found normal muscle strength and normal reflexes on examination.  (AR 950-951.)  Plaintiff had a normal gait and negative Phalen's and Tinel's.  (AR 952.)   There was mild medial nerve incomplete paralysis (AR 952), with no other pertinent physical findings (AR 954).   Plaintiff had pain on both sides of the head with nausea, vomiting, sensitivity to light and sound, and changes in vision lasting 1-2 days that occurred more frequently than one per month.  (AR 956-957.)  Dr. Mehta opined that Plaintiff's headache condition does not affect her ability to work.  (AR 958.)

Plaintiff was seen on June 5, 2013, by Dr. Pham at the VA regarding complaints of foot pain.  (AR 960-964.)  Plaintiff complained of dull aching pain in left foot that increases with activity which was 3/10.  She reported she can stand for about thirty minutes to an hour before experiencing pain.  (AR 965.)   Dr. Pham opined that Plaintiff's bunion does not impact her ability to work.  (AR 972.)

Plaintiff was evaluated for a PTSD questionnaire on June 6, 2013, at the VA.  (AR 933-945.)  Plaintiff was found to have moderate symptoms of PTSD.  (AR 943.)   Dr. Sayasane opined that Plaintiff's PTSD condition does not render her unable to secure or maintain substantially gainful employment.  (AR 943.)  Dr. Sayasane noted that the recent award of increase "was primarily related to her physical conditions of migraine headaches, and a back condition that has not yet been evaluated.  Although she complained of the physical limitations, this writer did not observe impairment with physical and sedentary employment."  (AR 943.)  He

1  deferred the case for a medical opinion.  (AR 943.)

2       On October 15, 2013, Plaintiff was seen for a routine follow-up.  (AR 923.)  MRI of

3  lumbar spine revealed degenerative disc and joint disease causing severe left-sided foraminal

4  stenosis at L5/S1 and moderate right sided foraminal stenosis at L5/S1.  (AR 927.)  On

5  examination of the lumbar spine, Plaintiff was found to have tenderness and mild pain with

6  motion.  (AR 821.)  On this visit and on her next visit on March 5, 2014, Plaintiff reported pain

7  of 5/10.  (AR 926, 915.)

8       Plaintiff was examined on June 30, 2014, at Golden Valley Health Center and reported

9  her pain was a four and was worsening.  (AR 819.)  However, the record reflects pain of 0/10 on

10  the visit.  (AR 820.)  On examination, the findings reflect TTP lumbar and cervical spine, some

11  spasms.  (AR 820.)  Plaintiff had tenderness in lumbar spine and mild pain with motion.  (AR

12  821.)  An MRI of the cervical spine revealed slight broad based bulges at C5/6 and C6/7 but no

13  significant extradural, intradural extramedullary, or intramedullary abnormalities were noted;

14  loss of normal cervical lordosis; mild disc space narrowing C4/5, C5/6; prominent Modic type II

15  peridscal marginal anterior endplate osteophytes C5/6, C6/7.  (AR 815.)

16       Plaintiff had MRIs on April 21, 2014.  The MRI of the C spine revealed slight broad

17  based disc bulges C5/6, C6/7 but no significant extradural, intradural extramedullary or

18  intramedullary abnormalities noted; loss of normal cervical lordosis; mild disc space narrowing

19  C4/5, C5/6, prominent Modic type II peridiscal degenerative bone marrow changes C5/6, C6/7;

20  and large peridscal marginal anterior endplate osteophytes C5/6, C6/7.  (AR 1061.)  The MRI of

21  the lumbar spine showed no evidence for significant pathology.  (AR 1062.)

22       On July 22, 2014, Plaintiff had a comprehensive orthopedic evaluation by Dr. Van Kirk.

23  (AR 1099-1103.)  Dr. Van Kirk noted that Plaintiff was able to sit comfortably in the exam chair,

24  get up and out of the chair, walk around the examination room, and get on and off the table

25  without difficulty.  (AR 1101.)  Plaintiff was markedly overweight.  (AR 1101.)  Her circulation

26  was adequate in both upper and lower extremities.  (AR 1101.)  Plaintiff's Romberg was normal

27  and tandem walking with one foot in front of the other was satisfactory.  (AR 1101.)  Plaintiff

28  could get up on her heels and toes; squat almost all the way down; and had a normal heel-toe gait

1   pattern with no limp.  (AR 1101.)

2          On examination of the cervical spine, Dr. Van Kirk found generalized discomfort in the

3   mid cervical spine area as well as paracervical soft tissue.  (AR 1101.)  Plaintiff was able to

4   slowly go through full range of motion of cervical spine.  (AR 1101.)  Flexion was 0-50 degrees

5   and extension was 0-60 degrees; lateral flexion 0-45 degrees; and rotation 0-80 degrees

6   bilaterally.  (AR 1101.)

7          Plaintiff's main pain was in mid lumbar spine area and radiated into the waist area and

8   buttocks.  (AR 1101.)  Plaintiff was able to bend over to within eight inches of touching the floor

9   with her long fingers.  (AR 1101.)  Range of motion was: flexion 0-70 degrees; extension 0-15

10  degrees; side to side tilt 0-15 degrees; and rotation 0-30 degrees in each direction of the

11  dorsolumbar spine.  (AR 1101.)

12         Plaintiff's hip joints, knee joints, ankle joints, shoulder joints, elbow joints, wrist joints,

13  finger, and thumb joints had no pain or difficulty.  (AR 1102.)  Straight leg raise was 90/90

14  bilaterally in the supine and sitting positions.  (AR 1102.)  Motor strength was normal 5/5 in the

15  upper and lower extremities bilaterally.  (AR 1102.)  Light touch and pinprick were intact

16  throughout upper and lower extremities.  (AR 1102.)  Deep tendon reflexes were bilaterally

17  equal, but present only in the bicep reflexes in the upper extremities.  (AR 1102.)  Patellar

18  reflexes and ankle jerks were normal.  (AR 1102.)

19         Dr. Van Kirk diagnosed Plaintiff with chronic cervical musculoligamentous strain/sprain

20  associated with degenerative changes of the mid to lower cervical spine; chronic lumbosacral

21  musculoligamentous strain/sprain associated with mild disc space narrowing at L5-S1, mild bony

22  proliferative changes at L3-L4; degenerative disc and joint disease causes severe left-sided

23  foraminal stenosis at L5-S1 and moderate right-side foraminal stenosis at L5-S1.  (AR 1102-

24  1103.)  He opined that Plaintiff should be able to stand and/or walk cumulatively for six hours

25  out of an eight hour day; sit cumulatively for six hours out of an eight hour day; lift and carry ten

26  pounds frequently and twenty pounds occasionally limited due to chronic neck and lower back

27  pain; only occasional postural activities due to chronic lower back pain; and had no manipulative

28  limitations except that she should not be required to work repetitively with her arms over her

1    head because this would likely increase neck pain; and she should not work in an extremely cold

2    or damp environment.  (AR 1103.)

3           While Plaintiff did have instances where she complained of more pain, significant

4    evidence in the medical record supports the ALJ's finding that Plaintiff's symptoms were

5    generally mild and well-controlled with conservative treatment.  Although Dr. Villarama found

6    that Plaintiff's pain was moderate or severe and the record demonstrates that while she did have

7    incidents of pain that was 5/10 or higher (AR 673, 926, 1017, 1010), she generally reported at

8    her medical appointments that her pain was 3/10 or less (AR 567, 697, 710, 751, 753, 758, 762,

9    820, 965, 998, 999, 1016).  The ALJ need not accept the opinion of any physician that is brief,

10   conclusory, and unsupported by clinical findings.  Thomas v. Barnhart, 278 F.3d 947, 957 (9th

11   Cir. 2002).

12          The ALJ gave substantial weight to the July 2014 opinion of Dr. Van Kirk because it was

13   consistent with the medical record, examination findings and overall evidence of record.  (AR

14   17.)  Dr. Van Kirk's opinion is consistent with the medical findings of the VA evaluation which

15   found that Plaintiff's medical and psychiatric conditions did not render her unable to secure and

16   maintain substantial gainful employment (AR 16, 933-975), and the other evidence in the

17   medical record.  Since Dr. Van Kirk's opinion is based upon independent clinical findings that

18   differ from those of Dr. Villarama and are supported by other substantial evidence in the record,

19   Dr. Van Kirk's opinion is substantial evidence to support the ALJ's opinion.  Andrews, 53 F.3d

20   at 1041.

21          The ALJ provided specific and legitimate reasons for rejecting Dr. Villarama's opinion

22   that are based on substantial evidence in the record.

23          **B.     Credibility Finding**

24          Plaintiff also contends that the ALJ erred in assessing her credibility.  "An ALJ is not

25   required to believe every allegation of disabling pain or other non-exertional impairment."  Orn

26   v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted).

27   Determining whether a claimant's testimony regarding subjective pain or symptoms is credible,

28   requires the ALJ to engage in a two-step analysis.  Molina v. Astrue, 674 F.3d 1104, 1112 (9th

1   Cir. 2012).   The ALJ must first determine if "the claimant has presented objective medical
2   evidence of an underlying impairment which could reasonably be expected to produce the pain
3   or other symptoms alleged."   Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)
4   (internal punctuation and citations omitted).   This does not require the claimant to show that her
5   impairment could be expected to cause the severity of the symptoms that are alleged, but only
6   that it reasonably could have caused some degree of symptoms.   Smolen, 80 F.3d at 1282.

7         Second, if the first test is met and there is no evidence of malingering, the ALJ can only
8   reject the claimant's testimony regarding the severity of her symptoms by offering "clear and
9   convincing reasons" for the adverse credibility finding.   Carmickle v. Commissioner of Social
10  Security, 533 F.3d 1155, 1160 (9th Cir. 2008).   The ALJ must specifically make findings that
11  support this conclusion and the findings must be sufficiently specific to allow a reviewing court
12  to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not
13  arbitrarily discredit the claimant's testimony.   Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir.
14  2004) (internal punctuation and citations omitted).   Factors that may be considered in assessing a
15  claimant's subjective pain and symptom testimony include the claimant's daily activities; the
16  location, duration, intensity and frequency of the pain or symptoms; factors that cause or
17  aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other
18  measures or treatment used for relief; functional restrictions; and other relevant factors.
19  Lingenfelter, at 1040; Thomas, 278 F.3d at 958.   In assessing the claimant's credibility, the ALJ
20  may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's
21  reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony
22  by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained
23  failure to seek treatment or to follow a prescribed course of treatment. . . ."   Tommasetti v.
24  Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284).

25        The ALJ found that Plaintiff's allegations were not fully credible because she testified
26  that she attended college through 2011, took a full course load and planned to complete her
27  degree and she was able to sit through the hearing for over an hour with no apparent discomfort.
28  (AR 16.)   Plaintiff argues that the ALJ's finding that she went to college does not support a

17

1  finding that Plaintiff's daily activities are transferrable to a work setting.  However, Plaintiff

2  testified that she had memory problems.  (AR 40-41.)  Plaintiff stated that she loses focus, cannot

3  concentrate, forgets things, and is unable to make decisions because of her inability to focus.

4  (AR 41-42.)  She also testified that she has frustration issues which affect her ability to interact

5  with other people due to her inability to concentrate and focus and causes her to be unable to

6  finish things she starts.  (AR 47-48, 49-50, 52.)  Plaintiff's ability to attend school, even if

7  online, take a full course load, and graduate is inconsistent with her allegations regarding the

8  severity of her concentration and focus issues.  The ALJ properly considered that Plaintiff's

9  allegations regarding the severity of her mental symptoms were inconsistent with her ability to

10  attend school full time and complete her associate's degree.  See Light v. Social Sec. Admin.,

11  119 F.3d 789, 792 (9th Cir. 1997) (ALJ may consider inconsistencies between the claimant's

12  testimony and his conduct in determining credibility).

13      During the hearing, Plaintiff testified that she was able to sit "maybe an hour" but that

14  she needed to adjust and that she spends most of her time in bed watching television because that

15  way she can position herself so she is comfortable (AR 40, 50), however the ALJ noted that she

16  was able to sit for more than an hour during the hearing without any apparent discomfort (AR

17  16).   The record demonstrates that similar observations were made by physicians when

18  examining Plaintiff.  (AR 503, 648, 943, 1101.)  While an ALJ's personal observations may form

19  the sole basis of discrediting a claimant's credibility, they may be used in the overall evaluation

20  of the credibility of the claimant's statements.  Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).

21      The ALJ also found in addressing Dr. Villarama's opinion that Plaintiff's symptoms were

22  generally mild and well controlled with conservative treatment as discussed above.  (AR 16-17.)

23  Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the

24  severity of the impairment.  Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007).

25      The ALJ further found that Plaintiff engaged in a full range of daily activities, including

26  caring for her child, attending college full-time, and interacting with people.  (AR 17.)   On

27  February 1, 2013, the record notes that household chores become a little difficult after ten

28  minutes.  (AR 756.)  On July 9, 2014, Plaintiff told Dr. Cohn that she had no difficulty

1   competing household tasks, cleans the house, and goes shopping.  (AR 798.)  On June 6, 2013,

2   Plaintiff reported that she has a good relationship with her son and has several good friendships.

3   (AR 937.)  On July 22, 2014, Plaintiff told Dr. Van Kirk that she is unable to do heavy yard work

4   or house hold chores such as vacuuming, mopping or taking out the trash, but she drives and

5   rides a bicycle every day.  (AR 1100.)  During the August 21, 2014 hearing, while Plaintiff

6   testified that she takes a while to get going in the morning, she unloads that dishwasher, prepares

7   meals, vacuums, sweeps and mops, although not on a regular basis, and does laundry.  (AR 44.)

8   Plaintiff goes shopping although she does not walk around the mall.  (AR 46-47.)  There are two

9   ways for an ALJ to "use daily activities to form the basis of an adverse credibility determination:

10  if the claimant's activity contradicts his testimony or if the claimant's activity meets the

11  threshold for transferable work skills."  <u>Phillips v. Colvin</u>, 61 F. Supp. 3d 925, 944 (N.D. Cal.

12  2014).  Here, the ALJ considered that Plaintiff's daily activities contradict her claims regarding

13  the severity of her symptoms.

14       The ALJ provided clear and convincing reasons that are supported by substantial

15  evidence in the record, in finding that Plaintiff's allegations regarding the severity of her

16  symptoms were not entirely credible.

17       **C.    Veteran's Administration Rating**

18       Finally, Plaintiff argues that the ALJ erred by failing to consider her disability rating

19  from the VA.  "[A]lthough a VA rating of disability does not necessarily compel the SSA to

20  reach an identical result, 20 C.F.R. § 404.1504, the ALJ must consider the VA's finding in

21  reaching his decision."  <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076 (9th Cir. 2002).  The ALJ

22  is ordinarily required to give great weight to the VA determination of disability, and must

23  provide persuasive, specific, and valid reasons to give the rating less weight that are supported

24  by the record.  <u>Id.</u>

25       In his opinion, the ALJ considered that Plaintiff's disability rating had been increased

26  from 50 to 70%; and her entitlement to individual un-employability was denied on June 17,

27  2013.  (AR 16, 795-796.)  Plaintiff argues that remand is required due to the ALJ's failure to

28  properly assess the VA disability rating, provide the weight given to the opinion and reasons to

19

1  reject the opinion.  However, the ALJ did not reject the VA disability rating but found that

2  despite her 70% disability rating, Plaintiff was not unemployable.   Review of the VA

3  consultations and examinations which formed the basis of the determination that she was not

4  entitled to individual un-employability reveals that the VA physicians found that Plaintiff's

5  medical conditions which entitle her to disability did not affect Plaintiff's ability to perform

6  work.  (AR 947-972.)

7       The Ninth Circuit has recognized the marked similarity between disability programs of

8  the VA and the Social Security Administration.  Valentine v. Comm'r Soc. Sec. Admin., 574

9  F.3d 685, 695 (9th Cir. 2009).  Here, the VA found that while Plaintiff had a 70% disability

10 rating, her impairments did not impair her ability to find and maintain gainful employment.

11 Specifically, Dr. Mehta found during his neurology consultation that "neither migraine

12 headaches nor [bilateral carpal tunnel] conditions render [Plaintiff] unable to secure and maintain

13 gainful employment."  (AR 947.)  Dr. Pham found that Plaintiff's foot condition did not impact

14 her ability to find work.  (AR 972.)  Dr. Sayasane opined that "in spite of her persistent sleep

15 problems and notable difficulties with concentration, [Plaintiff's] PTSD condition does not

16 render her unable to secure or maintain substantially gainful employment."  (AR 943.)  The ALJ

17 properly considered that, despite her disability rating of 70%, the VA had not found Plaintiff to

18 be un-employable.

19       / / /

20       / / /

21       / / /

22       / / /

23       / / /

24       / / /

25       / / /

26       / / /

27       / / /

28       / / /

1

2

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in determining the weight to be accorded to Dr. Villarama's opinion, in assessing Plaintiff's credibility, or in considering the VA disability rating.  Accordingly,

IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Tina Twynette Davenport.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **September 19, 2016**

_____

UNITED STATES MAGISTRATE JUDGE